THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
NO. 2:07-CV-52-BR

TERRY D. MOSES,

    Plaintiff,

v.

**MEMORANDUM AND**
**RECOMMENDATION**

NORTH CAROLINA DEPARTMENT
OF TRANSPORTATION

    Defendant.

This matter is before the Court on Defendant's motion for summary judgment. [DE-48.] Plaintiff has filed a response [DE-52], and the motion is ripe for ruling.

I. **Statement of the Case**

As an initial matter, prior to the filing of Defendant's motion, the Deputy Clerk entered an order [DE-46] indicating that Defendant had not filed an answer within the appropriate time period and instructing Plaintiff to seek a judgment. Defendant responded to the order, stating that it had initially filed an answer and motion to dismiss [DE-34 & 35], that by Judge Britt's Order on the motion to dismiss Plaintiff was ordered to amend his summons and serve the amended summons and complaint on Defendant [DE-42], that Plaintiff served the amended summons but not the complaint [DE-43 & 44], and that Defendant did not re-file its answer because no amended complaint was served with the summons. Plaintiff has not sought to reduce this matter to judgment in accordance with the Deputy Clerk's order. The Court finds that as it appears the service of the amended

1

summons ordered by Judge Britt was meant to cure a defect in service and not a defect in the complaint itself, judgment against Defendant would be inappropriate for failure to re-file its answer. Accordingly, the Court recommends that Defendant's answer filed at DE-34 serve as the answer of record in this case as if it were filed in response to the amended summons served by Plaintiff.

Plaintiff filed this action alleging employment discrimination under Title VII of the Civil Rights Act of 1964. Plaintiff alleges that Defendant unlawfully terminated his employment due to race and religion and in retaliation for his complaints of race discrimination. The Court previously dismissed Plaintiff's claim of religious discrimination. Defendant now moves for summary judgment, contending that Plaintiff has failed to make out a *prima facie* case on his remaining claims and that Defendant had legitimate, non-discriminatory reasons for terminating Plaintiff's employment, which Plaintiff failed to sufficiently counter.

## II.    Statement of the Facts

Plaintiff began his employment with the North Carolina Department of Transportation ("DOT") in 1987 as a Transportation Worker at the Jackson maintenance yard in Northhampton County. Plaintiff initially worked on an asphalt crew, advanced to working a backhoe, and eventually became a crew leader in the sign department. (Moses Dep. at 10-11.) Plaintiff worked without incident in Northhampton County for 15 years, but after management changes he began experiencing problems with his co-workers and receiving disciplinary action. (*Id.* at 12.) As a result of these incidents, on October 20, 2004, Plaintiff was notified that he would be transferred to the Halifax County maintenance yard. (Def.'s Mot. Summ. J., Ex. 1.) Although Plaintiff's classification and salary remained

2

unchanged, he was no longer a crew leader and returned to work on an asphalt crew.

Plaintiff's problems were not abated by the transfer. On April 28, 2005, Plaintiff had an altercation with two co-workers, Eclee Robinson and David Joyner, both African-Americans. This incident resulted in Plaintiff's suspension without pay for two weeks, although Plaintiff denied any wrongdoing. (Moses Dep. at 20-24, Def.'s Mot. Summ. J., Ex. 3.) Plaintiff also had a poor relationship with his direct supervisor, Joe Pittman, an African-American. (Moses Dep. at 17, Def.'s Mot. Summ. J., Ex. 5.) In September of 2005, Plaintiff wrote a letter to the DOT Human Resources Department complaining that Pitman cursed at him and was hateful and that he felt harassed. (Moses Dep. at 24-27, Def.'s Mot. Summ. J., Ex. 4.) This resulted in a meeting between Plaintiff, representatives from the DOT Human Resources department, Joe Pittman, and Bill Bass, who was in charge of supervising all employees assigned to the Halifax County Maintenance Yard. Plaintiff, at the time of the meeting, thought his complaints were addressed. (Moses Dep. at 27.) Bass subsequently held a meeting on October 6, 2005 with the Halifax Maintenance Yard employees, including Plaintiff, to resolve any potential issues between Pittman and his co-workers. Among the topics discussed were being a team player, insubordination, handling of personal differences, and the Work Place Violence Policy. (Moses Dep. at 28-29, Def.'s Mot. Summ. J., Ex. 6.)

The incident that ultimately led to Plaintiff's dismissal occurred on October 11, 2005. Plaintiff was working on the crew when Plaintiff's co-worker, Chris Thacker, a Caucasian, asked to use Plaintiff's rake. Plaintiff informed Thacker that he was using the rake and when Thacker asked for the rake a second time, Plaintiff said "get out of my way before I hit you with the rake." (Moses Dep. at 30-31.) Plaintiff asserts that this statement was not

a threat, but a practical warning that Thacker may be hit with the rake due to his proximity to it while Plaintiff was raking. Pittman witnessed the incident and indicated that he was going to write-up both Plaintiff and Thacker, to which Plaintiff responded "shit on that mess you talking about." (Moses Dep. at 34.) On October 13, 2005, Bass discussed the incident with Plaintiff. Bass posed a list of written questions to Plaintiff, which he answered as follows:

> Q: Do you think Chris was joking?
>
> A: Maybe.
>
> Q: Did you pick the rake up off the ground?
>
> A: I was working with the rake.
>
> Q: Did you tell Joe Pittman "shit on you Joe Pittman"?
>
> A: Yes.
>
> Q: Did Chris say Terry you are a MF?
>
> A: No.
>
> Q: Did you tell Chris that you would hit him with the rake?
>
> A: I said get and leave my rake alone before I hit you with it in a joking way.

(Def.'s Mot. Summ. J., Ex. 8.) Plaintiff signed the statement, but asserts that his conduct was not meant to threaten or intimidate and that he did nothing that should cause him to lose his job. (Moses Dep. at 36, Def.'s Mot. Summ. J., Ex. 8.) A pre-disciplinary conference was held on October 19, 2005, to provide Plaintiff an opportunity to respond to the recommendation that Plaintiff be dismissed for "unacceptable personal conduct," specifically threatening Thacker and making offensive comments to Pittman. (Def.'s Mot. Summ. J., Ex. 9.) Plaintiff was subsequently terminated on October 25, 2005. (Def.'s Mot.

4

Summ. J., Ex. 10.) The reasons cited for Plaintiff's termination were the Thacker and Pittman incidents of October 11th and a history of "conduct deficiencies" dating back to 2003. (*Id.*)

Plaintiff appealed his termination to the DOT Employee Relations Committee, which upheld the termination, and that decision was affirmed on by the Chief Deputy Secretary. (Moses Dep. at 44-45, Def.'s Mot. Summ. J., Ex. 13.) Plaintiff then filed a petition for hearing with the North Carolina Office of Administrative Hearings ("OAH"). After conducting a hearing, the Administrative Law Judge found that Plaintiff was dismissed for just cause, and the State Personnel Committee affirmed the decision. (Bass Aff. ¶ 21.) Plaintiff also filed an EEOC charge on May 17, 2006, which was investigated by the OAH. The OAH issued a determination that its investigation failed to corroborate Plaintiff's claims of retaliation and race discrimination. (Def.'s Mot. Summ. J., Ex. 14.) The EECO issued Plaintiff a right to sue letter on August 24, 2007.

### III. Discussion

#### A. Legal Standard

Summary judgment is appropriate in those cases in which there is no genuine dispute as to a material fact, and in which it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Haavistola v. Community Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir. 1993). Summary judgment should be granted in those cases "in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." *Id.* In making this determination, the court draws all permissible inferences from the

5

underlying facts in the light most favorable to the party opposing the motion. "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate ." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).

B.  Analysis

1.  Race Discrimination Claim

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). Plaintiff may prove the alleged discrimination in either of two ways: "(1) by 'using any direct or indirect evidence relevant to and sufficiently probative' of discriminatory purpose or (2) by using the burden-shifting approach outlined in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973)." *Belyakov v. Leavitt*, 2009 WL 136918, at *5 (4th Cir., Jan. 21,2009)(citing *Rhoads v. FDIC*, 257 F.3d 373, 391-92 (4th Cir.2001)). As Plaintiff's race discrimination claim lacks any direct or indirect evidence sufficiently probative of discriminatory purpose, the Court will apply the burden-shifting analysis.

In order to survive summary judgment under the burden shifting analysis, Plaintiff must "establish a *prima facie* case of discrimination, defendant must in turn offer a legitimate, non-discriminatory reason for the allegedly discriminatory act, and plaintiff must then finally 'show that [defendant] 's stated reason for [the act] . . . was in fact pretext.'" *Johnson v. Kmart Corp.*, 2008 WL 4346450, at *3 (E.D.N.C., Sept. 16, 2008)(quoting

6

*McDonnell Douglas Corp.*, 411 U.S. at 804). To demonstrate the *prima facie* case of race discrimination under the pretext framework, Plaintiff must show that "(1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007).

Plaintiff, an African-American, is a member of a protected class, and his termination is an adverse employment action. The evidence in the record, however, fails to support that Plaintiff's performance met his employer's legitimate expectations at the time he was terminated or that his position remained open or was filled by similarly qualified applicants outside the protected class.

While Plaintiff thought he was doing a good job and did not believe his actions merited termination, "the self-perception of his qualifications by a plaintiff in a suit of this sort is irrelevant. What matters is 'the perception of the decision-maker. . . .'" *Farasat v.Paulikas*, 32 F. Supp. 2d 249, 255 (D. Md. 1998), *aff'd* 166 F.3d 1208, 1998 WL 887017 (4th Cir. 1998)(quoting *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)). The Court may not decide whether the DOT's decision was "wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination" and it was not discriminatory. *DeJarnette v.Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997)). Plaintiff had violated DOT policy on multiple occasions and was warned that further violations might result in

7

termination. (Def.'s Mot. Summ. J., Ex. 1 & 3.) Consequently, he has failed to demonstrate that his performance met his employer's legitimate expectations at the time he was terminated. *See,* e.g., *Johnson*, 2008 WL 4346450, at *4 ("A plaintiff who violates company policy and fails to improve his performance despite a warning has not demonstrated satisfactory performance.") Furthermore, there is no evidence in the record to indicate that Plaintiff's position remained open or was filled by similarly qualified applicants outside the protected class.

Even assuming, *arguendo*, that Plaintiff had established a *prima facie* case of discrimination, Defendant has offered a legitimate, non-discriminatory reason for terminating Plaintiff, and Plaintiff has failed to show that reason was a pretext for discrimination. Defendant's legitimate, non-discriminatory bases for terminating Plaintiff were the Thacker and Pittman incidents and a history of conduct deficiencies dating back to 2003. The burden then shifts to Plaintiff to show that the true reason for his termination was discriminatory. Plaintiff argues that the fact that he was punished while Thacker and Pittman were not proves he was terminated based on his race. The record does not support this claim. Plaintiff was terminated based on not only the Thacker and Pittman incidents, but for a history of violations. (Def.'s Mot. Surnm. J., Ex. 10.) Additionally, Thacker was reprimanded by Bass for his involvement in the incident with Plaintiff. (Bass Aff. ¶ 15.) Finally, while there is no evidence that Pittman was disciplined, the fact that he is also an African-American undercuts the persuasiveness of Plaintiff's claims.

As Plaintiff has failed to establish a *prima facie* case of discrimination or, alternatively, to show that Defendant's legitimate, non-discriminatory reason for terminating Plaintiff was pretext, the Court recommends granting summary judgment to Defendant on

the race discrimination claim.

## 2. Retaliation Claim

Title VII prohibits employer actions that "discriminate against" an employee because he has "opposed" a practice that Title VII forbids or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). In order to prove a *prima facie* case of retaliation under Title VII, Plaintiff must show that (1) he engaged in a protected activity; (2) the employer took an adverse employment action against him; and (3) a causal connection existed between the protected activity and the asserted adverse action. *Johnson*, 2008 WL 4346450, at *5. Once Plaintiff establishes a *prima facie* case, the burden shifts to the Defendant to proffer a legitimate, non-discriminatory reason for taking the adverse employment action. If the Defendant meets the burden, then Plaintiff must establish by a preponderance of the evidence that the proffered reasons are pretextual. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989).

Plaintiff engaged in protected activity when he complained of racism to U.S. Congressman Frank Ballance[1] in May of 2003 and when he complained of harassment in a letter to the DOT Human Resources Department in September of 2005. Plaintiff's termination was an adverse action against him by his employer. The evidence before the Court indicates that Plaintiff made his complaints in May of 2003 and September of 2005 and was terminated in October of 2005. The closeness in time of the protected act and

---

[1] Plaintiff's comments regarding the alleged racism in the Northampton County Maintenance Yard were published in the Roanoke Rapids Daily Herald on May 27, 2003. (Pl.'s Resp. to Def.'s Mot. Summ. J., Ex. 2 at pp. 19-20.)

the adverse action may raise an inference of causal connection between the two sufficient to establish the third element of the *prima facie* case. *See King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003). The September 2005 complaint is sufficiently close in time to Plaintiff's termination to raise the inference of causal connection. It also appears that Plaintiff's conduct issues began in 2003 after his complaints of racism to Congressman Ballance. (Def.'s Mot. Summ. J., Ex. 1 & 10.) However, this does not end the Court's inquiry because the DOT, as discussed above, has shown legitimate, non-discriminatory reasons for Plaintiff's termination. This places the final burden on Plaintiff to establish that the reasons given for his termination were pretextual.

Plaintiff asserts that he was terminated for using profanity and that Thacker and Pittman also used profanity but were not reprimanded. (Pl.'s Resp. to Def.'s Mot. Summ. J., Ex. 4 at p. 7.) This is insufficient to establish that the reasons for Plaintiff's termination were a pretext for discrimination. The evidence indicates that Plaintiff was terminated not only for making "disrespectful and offensive comments" to his supervisor, but also for threatening Thacker with violence in violation of the DOT's Workplace Violence Policy. (Def.'s Mot. Summ. J., Ex. 10.) These acts considered along with Plaintiff's history of conduct deficiency amount to more grievous conduct than that of Thacker. Additionally, Thacker's use of profanity was addressed. Bass held a coaching session with Thacker during which the use of offensive language was discussed, and Thacker was warned that further incidents might result in disciplinary action. (Bass Aff. ¶ 15.) While there is no evidence with regard to any disciplinary action taken against Pittman, the fact that he is also an African-American undercuts the persuasiveness of Plaintiff's claims. Finally, the closeness in time of the Plaintiff's complaints with his conduct problems and termination

is insufficient to preclude summary judgment where there is no other evidence of retaliation. *See Burns v. Uninet, Inc.*, 211 F.3d 1264, 2000 WL 349763, at *4 (4th Cir., April 5, 2000); *Williams*, 871 F.2d at 457. The Court finds that Plaintiff has failed to establish that the reasons given for his termination were a pretext for retaliation. Consequently, the Court recommends granting Defendant summary judgment on the retaliation claim.

IV. **Conclusion**

For the foregoing reasons, the Court **RECOMMENDS** that Defendant be granted summary judgment. The Court further **RECOMMENDS** that Defendant's answer filed at DE-34 serve as the answer of record in this case as if it were filed in response to the amended summons served by Plaintiff.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a *de novo* review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This 23rd day of March 2009.

DAVID W. DANIEL
United States Magistrate Judge